IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 22, 2015


STATE OF TENNESSEE v. MICHAEL RICHARD MILLER

Appeal from the Criminal Court for Davidson County
No. 2011B1165      Steve R. Dozier, Judge

_____

No. M2014-00923-CCA-R3-CD – September 23, 2015

_____


The defendant, Michael Richard Miller, was convicted of three counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, and one count of employing a firearm in the course of a dangerous felony. On appeal, he challenges the trial court's imposition of an effective forty-six-year sentence based upon partial consecutive sentencing. Specifically, the defendant argues that: (1) the trial court misapplied the consecutive sentencing factors in making its sentencing determination; and (2) the trial court erred in ordering that the conviction for employing a firearm in the course of a dangerous felony be served consecutively to all his convictions rather than only to the underlying dangerous felony. Following review of the record, we affirm the sentences as imposed.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, delivered the opinion of the Court, in which ALAN E. GLENN and ROGER A. PAGE, J.J., joined.

Nathan D. Cate, Nashville, Tennessee, for the Appellant, Michael Richard Miller.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Glen Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the Appellee, State of Tennessee.


**OPINION**

## Factual Background and Procedural History

On December 27, 2010, the defendant and an accomplice, Jeremy Barrow, proceeded to enter the home of Cassandra Rowell, who resided there with her boyfriend and their child. The men entered with the intent to commit a robbery against a former drug supplier of Barrow's, whom he believed resided in the house. The two drove to the residence in the defendant's girlfriend's mother's Cadillac, which they parked a street over from Ms. Rowell's residence. The men came through the backyard and gained entry through the garage door. They entered the home armed with a Ruger .357 pistol and a 9 mm pistol. The two wore latex gloves and stocking caps, which they had purchased at Wal-Mart a few hours earlier. The receipt later found in Mr. Barrow's possession also indicated that duct tape was also purchased. The defendant was wearing a camouflage shirt.

Ms. Roswell and her boyfriend, Corey James, were asleep in their bedroom when the two men entered. Their two-year-old son was sleeping in his bedroom across the hallway. At approximately 2:30 a.m., the men entered the couple's bedroom and turned on the lights. The two men began screaming at the couple and asking them for drugs and money. The couple was ordered to lie on their stomachs. When the couple denied having any money or drugs, they were both hit multiple times with a gun. While Ms. Rowell could not recall how many times she was hit, Mr. James said that he "stopped counting at four."

At some point, the defendant grabbed Ms. Rowell by her hair, dragging her from the bed. As the defendant and Ms. Rowell were leaving the bedroom, the defendant told his accomplice to watch Mr. James and that "if he move[d] kill him." The defendant then escorted Ms. Rowell to various rooms in the home. Ms. Rowell gave him cash from Mr. James' wallet and her purse, totaling approximately $150. While they moved through the home, the defendant repeatedly told Ms. Rowell "not to try anything slick or he would kill [her]." The defendant also took a cell phone. The defendant inquired as to how much money Ms. Rowell could get from the ATM. When she explained to him that it was Christmas and that she had no money in the bank to get, he shouted that she was lying and cursed at her. Additionally, at some point, the defendant gathered up some of the victims' Christmas presents, including a gaming system, and placed them in a gift bag in the living room.

Eventually, Ms. Rowell was escorted back into the bedroom. The two home invaders duct taped Ms. Rowell's and Mr. James' hands and feet together and then forced them to lie across each other on the bed. Ms. Rowell's eyes were also covered with tape. At some point during this period, the couple's son entered the bedroom, having been awakened by the noises. The child was ordered to return to his own bedroom. As Mr. Barrow was assisting the defendant with taping the victims, he placed his revolver in his

2

left pocket. The .357 revolver discharged, hitting Mr. Barrow in the left knee. Ms. Rowell stated that she heard the gunshot and said she "didn't know if they had killed my baby and they had killed my boyfriend[,] . . . all I could do was pray." The two victims remained on the bed and heard whispering in the hallway before finally hearing the outside door to the home open and close. At that point, Mr. James was able to free himself and then freed Ms. Rowell. They then collected their child and left the home. The group went across the street to a neighbor's home, and the police were called. The victims remained at their neighbor's residence until police arrived.

Police questioned Ms. Rowell and Mr. James separately. Each gave descriptions of the suspects and the events that occurred in their home. While police were conducting their investigation at the couple's home, they were diverted to Summit Medical Center. The defendant had driven Mr. Barrow to the emergency room there for treatment. Because Mr. Barrow was brought in with a gunshot wound, the security guard asked the defendant to remain to speak with the police. The defendant initially complied, but he eventually left the hospital and began walking down the street. An officer coming from the initial crime scene was approaching the hospital and observed the defendant's departure and noted that he matched the description of one of the perpetrators. The defendant was apprehended by the police and taken into custody. His girlfriend's mother's car was found in the hospital parking lot and had a roll of duct tape inside.

Based upon these events, the defendant was convicted of three counts of especially aggravated kidnapping, two counts of aggravated robbery, one count of aggravated burglary, and one count of employing a firearm in the course of a dangerous felony. Mr. Barrow testified at the defendant's trial, along with both Ms. Rowell and Mr. James. Following his conviction, the defendant was notified that the State intended to use his seven prior convictions for enhancing and impeachment purposes.

At the sentencing hearing, the defendant presented two witnesses, along with his own testimony. He first called Hannah Marie Waits, his fiancée. She testified that when she met the defendant, he was a deacon helping children in church. However, following the death of his mother, whom the defendant was extremely close to, the defendant began using drugs and alcohol. She claimed that the defendant had improved after the incident and that he regretted what had happened. Ms. Waits stated that she was not aware of a prior assault conviction or the defendant's association with the Gangster Disciples.

The defendant also called Megan Ussery Sanders, his biological sister. However, she had been adopted as a small child and had only recently reunited with her mother and the defendant. She also testified with regard to the defendant's actions following the death of their mother.

3

The final witness called was the defendant. He acknowledged that his prior criminal convictions occurred before the death of his mother. He also acknowledged that he had an affiliation with the Gangster Disciples and that, at the time of these offenses, he was using drugs. He also admitted that he was on probation at the time he committed the instant offenses. He testified that the sentence initially imposed was a community corrections sentence, but he had "graduated" to probation. The defendant also agreed that he had committed the instant offenses and stated that he was sorry.

After hearing the evidence presented, the trial court sentenced the defendant to serve nineteen years for two of the especially aggravated kidnappings, twenty years for the third kidnapping charge, fifteen years for each of the two aggravated robbery convictions, eight years for aggravated burglary, and seven years for the firearm conviction. The court also imposed partial consecutive sentencing and sentenced the defendant to an effective term of forty-six years in the Department of Correction. Following the denial of his motion for new trial, the defendant filed the instant timely appeal.

## Analysis

On appeal, the defendant challenges on the imposition of consecutive sentencing. Specifically, he contends that the trial court erred in ordering the nineteen-year sentence for especially aggravated kidnapping in Count 1 be served consecutively to the twenty-year especially aggravated kidnapping sentence in Count 3. He contends that the trial court improperly applied the consecutive sentencing criteria in reaching its determination. Secondly, he contends that the court erred in ordering the employing a firearm conviction be served consecutively to any sentence other than the one for the underlying aggravated burglary pursuant to Tennessee Code Annotated section 39-17-1324(e)(1).

A trial court's decision to impose consecutive sentencing is reviewed under an abuse of discretion standard accompanied by a presumption of reasonableness, so long as the trial court states for the record that the defendant falls into one of seven categories enumerated in Tennessee Code Annotated section 40–35–115(b). *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). A court may impose consecutive sentences if it finds that

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a

4

result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

In order to impose consecutive sentences on the basis that a defendant is a dangerous offender, the trial court must also "conclude that the evidence has established that the aggregate sentence is 'reasonably related to the severity of the offenses' and 'necessary in order to protect the public from further criminal acts.'" *Pollard*, 432 S.W.3d. at 863 (quoting *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995)). "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id*. at 862.

In its written order imposing the defendant's sentences, the trial court stated as follows:

In making its sentence determination this court has considered (1) the evidence received at the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) the potential for rehabilitation or treatment. . . .

The parties agree that the defendant is to be sentenced as a Range II offender as to the B and C felonies, which is applicable to counts four (4)

5

through seven (7). The Court also finds the defendant has the qualifying convictions to support the range. Further, the Court is to determine the length of the sentence, manner of service, and whether the sentence in each count shall be served consecutively or concurrently. . . .

The court finds the following enhancement factors apply to the defendant:

(2) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range. The defendant's record contains seven (7) felony convictions. He also testified that he has an extensive history of illegal drug use.

(4) A victim of the offense was particularly vulnerable because of age. This factor applies to count three (3) only. The child victim referred to in this count was approximately two (2) years old.

(9)The defendant possessed or employed a firearm during the commission of the offense. This factor applies to count three (3) and count six (6).

(13) At the time the felony was committed the defendant was on probation for burglary of a motor vehicle.

. . . .

The Court does not find any applicable mitigating factors.

. . . .

Based upon the applicable sentencing factors and the nature of the crime, the Court imposes the following sentence:

Count 1:    Especially Aggravated Kidnapping    19 years at 100%

Count 2:    Especially Aggravated Kidnapping    19 years at 100%

6

Count 3:       Especially Aggravated Kidnapping      20 years at 100%

Count 4:       Aggravated Robbery                  15 years at 85%

Count 5:       Aggravated Robbery                  15 years at 85%

Count 6:       Aggravated Burglary                 8 years at 35%

Count 7:       Employment of a Firearm during the Commission of or Attempt to Commit a Dangerous Offense           7 years at 100%

In consideration of consecutive sentencing, the Court has considered Tenn. Code Ann. 40-35-115(b) and finds the following factor[s] appl[y] to the defendant:

(2) The defendant that is an offender whose record of criminal activity is extensive. The defendant has seven (7) felony convictions. He has also violated the terms of his probation previously.

(6) The defendant is sentenced for an offense committed while on probation. The defendant was on probation for burglary of a motor vehicle at the time this offense was committed.

Tennessee Code Annotated section 40-35-115(b). In this case, the Court also finds that the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995). The Court finds this factor applies as an aggregate term is necessary to appreciate the seriousness of this offense and is necessary to protect the public from further serious criminal conduct by this defendant. The Court finds consecutive sentencing is reasonably related to the severity of this offense based upon

the fact that the defendant and a second assailant used a weapon to invade the victims' home. The victims were taped together by their hands and feet and held at gunpoint. After a shot was fired, the victim's small child came into the room and was escorted back to his bedroom. Based upon this finding, the Court orders counts one (1) and three (3) to run consecutively to one another. Further, in this case, count seven (7) Employing a Firearm During Commission or Attempt to Commit a Dangerous Felony, pursuant to [Tennessee Code Annotated section] 39-17-1324(e)(1), must be a sentence to serve and served consecutively to count six (6). Based upon the above mentioned factors, the Court orders count seven (7) to run consecutively to all counts. Therefore, the Court imposes an effective sentence of forty-six (46) years to serve in the Tennessee Department of Correction.

## I. Application of Consecutive Sentencing Criteria

First, the defendant contends that the trial court erred in ordering that two of the especially aggravated kidnapping convictions be served consecutively to each other. He asserts that the trial court sentenced him to serve the counts consecutively because of the defendant's criminal history and because the defendant was sentenced for an offense committed while on probation.

The defendant's argument centers around the fact that the sentence for which he was on probation at the time he committed the instant offenses was actually originally a sentence of community corrections that had been converted to probation. He contends that our supreme court has determined that community corrections is not the equivalent of probation within the meaning of Tennessee Code Annotated section 40-35-115(b)(6), one of the factors which the trial court relied upon in imposing consecutive sentencing. The defendant relies upon *State v. Pettus*, 986 S.W.2d 540, 544 (Tenn. 1999), in which the court held that a community corrections sentence did not support imposing consecutive sentencing pursuant to 40-35-115(b)(6). The defendant acknowledges that the *Pettus* court nonetheless upheld the consecutive sentencing because the trial court had also relied upon an alternative factor in determining the total aggregate sentence. However, the defendant attempts to distinguish *Pettus* by arguing that in his case, the trial court specifically relied on both factors in coming to the total aggregate sentence. While acknowledging that a finding of multiple factors is not required to impose consecutive sentencing, the defendant contends that the fact that the trial court specifically relied on both criteria preponderates against a holding that if only one factor applied, the court would have arrived at the same total sentence. He asks this court to remand for resentencing, requiring the trial court to only apply the factor of the defendant's criminal history and not that he committed the offense while on probation.

8

We do agree with the defendant that the trial court would be unable to rely upon the factor 6 criterion if the instant offense was committed while the defendant was on a community corrections sentence. *Pettus* does conclude that the legislature did not intend a community corrections sentence and a probation sentence to be equivalents for purposes of consecutive sentencing under Tennessee Code Annotated section 40-35-115(b)(6). *Id.* at 544. However, although an unnecessary decision for our review, we are not convinced that this is applicable in this case. Although he was initially sentenced to a term of community corrections, the defendant specifically testified that he had "graduated" to probation. Thus, based upon his own testimony and the record, it is clear that, at the time he committed the instant offenses, the defendant was in fact on probation.

Regardless, we cannot give credence to the defendant's attempt to distinguish the holding in *Pettus* that the finding of a separate factor supporting consecutive sentencing was sufficient to uphold consecutive sentencing. As noted, only a finding of one factor is required to impose consecutive sentencing. Moreover, the defendant seems to ignore the fact that the trial court specifically noted a third factor supported consecutive sentencing as well. From a reading of the court's order, it is clear that the trial court also found that the defendant was a dangerous offender. Additionally, all the required findings were made by the court supporting that conclusion. Again, a trial court may impose a consecutive sentence upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. Here the court enumerated three separate criteria on the record.

As such, we can reach no conclusion other than that the trial court specifically articulated reasons for ordering consecutive sentencing, thus providing a basis for meaningful appellate review. As such, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal. The record establishes that the defendant had multiple prior violent convictions, and he acknowledged his excessive drug usage and gang affiliation. The record establishes that he was on probation at the time he committed these offenses and that he had previously violated the terms of a probationary sentence. He was convicted of a violent home invasion involving multiple victims, including a two-year-old child, and which left his accomplice shot in the knee. No abuse of discretion was established on this record in ordering that the two aggravated kidnapping convictions be served consecutively.

## II. Tennessee Code Annotated section 39-17-1324(e)(1)

The defendant's second argument centers upon his employment of a firearm during the commission of a dangerous felony conviction. He contends that Tennessee Code Annotated section 39-17-1324(e)(1) mandates that this conviction be served

9

consecutively only to the underlying dangerous felony for the conviction, in this case the aggravated burglary. Thus, he contends that the trial court erred in ordering that the firearm conviction be served consecutively to all the sentences in the case.

The defendant is correct that Tennessee Code Annotated section 39-17-1324(e)(1) does mandate that the firearm conviction be served consecutively to the underlying felony sentence. Moreover, he is correct that the statute does not mandate that the firearm conviction be served consecutively to any other convictions in the case. *See State v. Chad Medford*, No. E2001-00335-CCA-R3-CD, 2013 WL 2424137 at *20 n.6 (Tenn. Crim. App. Feb. 26, 2013) (noting defendant's concession that his conviction for employing a firearm during a dangerous felony must run consecutively to a conviction which was not the underlying felony is incorrect). Additionally, there is no dispute in this case that the trial court did in fact order that the firearm conviction be served consecutively to all sentences in this case. As a practical matter, because of partial concurrent sentencing, the firearm charge is actually only being served consecutively to the two aggravated kidnapping sentences which were also ordered to be served consecutively.

The defendant contends however, that the statute allows that firearm sentence may be imposed consecutively to ONLY the underlying felony conviction. He bases his argument on language in *State v. Powell*, which states that:

> We note for the trial court's guidance on retrial, however, that the statute provides that the sentence imposed for either of the firearms offenses charged in this case "shall be served consecutive to any other sentence the person . . . is sentenced to serve for conviction of the *underlying dangerous felony*." . . . As set forth above the only eligible underlying dangerous felony in this case is aggravated burglary. Accordingly, if Powell and/or Horne is convicted of the firearms offenses on retrial, the sentence imposed thereon must be served consecutively specifically only to the sentence on the aggravated burglary conviction.

*State v. Michael L. Powell and Randall S. Horne*, No. E2011-00155-CCA-R4-CD, 2012 WL 1655279, at *16 (Tenn. Crim. App. Jan. 24, 2012).

Following review, we must reject the defendant's argument. While the statute mandates consecutive sentencing with regard to the underlying felony, it does not preclude consecutive sentencing with other sentences if the trial court bases its decision upon one of the required factors for finding consecutive sentencing necessary. *See State v. Shawn Thompson*, No. 2013–01274–CCA–R3–CD, 2014 WL 2609535, *11 (Tenn. Crim. App. Mar. 11, 2014). The statute is silent with regard to all other sentencing

10

alignment considerations and does not place any other requirements or limitations in this regard. *State v. Darquan Swift*, No. W2011-02439-CCA-R3-CD, 2013 WL 3291884, at *9 (Tenn. Crim. App. June 24, 2013). Because we have determined above that the trial court did not abuse its discretion in reaching its sentencing determination, we conclude that the defendant is not entitled to relief.

## CONCLUSION

Based upon the foregoing, the sentences are affirmed as imposed.

_____
JOHN EVERETT WILLIAMS, JUDGE

11